# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BOBBY L. JACKSON,**

        **Plaintiff,**

**-vs-**          **Case No. 6:07-cv-1383-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's denial of Plaintiff's application for Supplemental Security Income and Disability Insurance benefits pursuant to the Social Security Act. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

### *PROCEDURAL HISTORY*

On April 6, 2001,[1] Plaintiff applied for Supplemental Security Income and Disability Insurance benefits under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 416, 423 R. 80-82, 401-403). The claims were denied at the initial level and upon reconsideration. Plaintiff then requested and received an administrative hearing before an Administrative Law Judge ("the ALJ") R. 69, 29-63).

The ALJ issued an unfavorable decision on September 26, 2003 (R. 11-23). Plaintiff requested review from the Appeals Council, which was denied on October 24, 2003 R. 6-9). Plaintiff filed a civil action

---

[1] It appears that Plaintiff has filed numerous applications for social security benefits, both before and after these applications (*See* R. 5N). The earlier applications were administratively denied and not appealed further. The ALJ consolidated the remaining viable applications. *Id.*

in this Court, and the matter was remanded for additional record development and further administrative proceedings. *Jackson v. Commissioner of Social Security,* Case No. 6:03cv1689-DAB, Doc. No. 24.

On remand, a second hearing was held before the same ALJ R. 685-702) and additional evidence was gathered. On October 19, 2005, the ALJ issued the instant unfavorable decision R. 5J-5DD). Plaintiff again requested Appeals Council review, which was denied on June 30, 2007 R. 5F-5H), making the October 19, 2005 decision the final decision of the Commissioner. This action timely followed, the matter has been briefed, and the decision is now ripe for review.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claims disability as of December 30, 1999 R. 80), based on neck and back pain, headaches, wrist pain and depression R. 132).

### *Summary of the Evidence*

At the time of the second hearing, Plaintiff was forty-five years of age, with a tenth grade education and work experience as a freight handler, a fork lift driver, a U-Haul driver, and a laborer. (R.115-16, 123-24,148, 689).

The administrative record is extensive, covering well over 600 pages and a five year period of time, and the evidence is set forth in great detail in the ALJ's opinion and the briefs. The record includes treatment notes from Plaintiff's physicians and other treating sources, consultative examinations from state agency practitioners, reports of non-examining state agency physicians and psychologists, as well as information provided by Plaintiff in forms and at two hearings, and the testimony of a Vocational Expert. In order to protect the privacy of Plaintiff, the Court does not set forth all of the evidence here, but refers to the evidence only to the extent necessary herein. By way

of summary, the medical evidence indicated that Plaintiff sought treatment, following motor vehicle accidents, for orthopedic injuries and depression.

The ALJ summarized the evidence and determined that Plaintiff had the severe impairments of degenerative disc disease of the lumbar and cervical spine; status post open reduction internal fixation of the right forearm; right first CMC joint arthritis; right wrist arthritis; sleep apnea, recently diagnosed, with good response to nocturnal use of oxygen; an affective disorder; and a somatoform disorder, but that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment R. 5X, 5BB-5CC).  The ALJ found Plaintiff's allegations of disabling limitations allegedly resulting from his impairments to be not fully credible R. 5Y-5Z, 5CC), and that Plaintiff was capable of a range of light work R. 5CC). The ALJ determined that Plaintiff would have moderate abilities to understand, remember, and carry out detailed instructions and maintain attention and concentration for extended periods, mild restrictions of daily living, and mild difficulties maintaining social functioning R. 5CC).  Relying on the testimony of the Vocational Expert R. 5BB), and application of the Medical-Vocational Guidelines, the ALJ found Plaintiff was not disabled R. 5BB, 5CC).

### *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C.§ 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff raises two issues: whether the residual functional capacity finding is supported by substantial evidence with respect to Plaintiff's mental health limitations; and whether the credibility finding is adequately supported. Plaintiff contends that the record includes opinions of treating physicians, non-examining consultants and consultative examiners, some of whom offer a more restrictive view of Plaintiff's mental limitations than that found by the ALJ. Moreover, Plaintiff asserts that the record contains more than enough evidence to support a contrary finding than that made by the ALJ, with respect to Plaintiff's credibility. The Court finds *both* these contentions to be true. Nonetheless, under the deferential standard of review, the question is not whether evidence exists which supports a contrary conclusion; rather, as set forth above, the question is whether there is substantial evidence to support the conclusion the ALJ reached. The Court finds such to be the case.

*Plaintiff's mental health*

The ALJ, in lengthy opinion, reviewed the medical evidence regarding Plaintiff's mental health, from Plaintiff's providers and from consultative examiners. Briefly summarized, following an assault in 2000, Plaintiff reported feeling depressed and was treated with Zoloft, prescribed by his family physician R. 374).

On August 31, 2001, at the request of the Social Security Administration, Plaintiff presented to Dr. Nancy Hinkeldey for a psychological examination and a general clinical evaluation with mental status R. 235-38). Thought processes appeared generally logical and coherent and without delusions although there was "some indication of mild paranoia." R. 236). No significant cognitive deficits were noted, but his affect was generally depressed. Dr. Hinkeldey concluded that Plaintiff was suffering from Major Depressive Disorder, Single episode, mild to moderate and a Pain Disorder associated with both psychological factors and a general medical condition R. 237). Dr. Hinkeldey opined that Plaintiff's social functioning "appears poor," social skills were deemed adequate at a basic level, and his functional ability "appears to be marginal at the present time." *Id.* Dr. Hinkeldey reported that Plaintiff did have some symptoms of depression, but that they had improved with treatment/medication and opined that "he may improve with continued treatment" R. 5R, 237).[2]

Plaintiff continued to receive antidepressants from his physician following this visit.

---

[2] When this Court remanded this case to the Commissioner for further administrative proceedings, the Court ordered the ALJ to, "'if feasible, obtain clarification from Dr. Hinkeldey about the term 'poor' used in his (sic) notes." The ALJ contacted Dr. Hinkeldey, and she provided the following response: "[t]he social skills displayed are not good, or excellent, but are not so poor as to be objectionable to most individuals. The interpretation of the above paragraph would be that Mr. Jones is an individual who can make it into this office and complete the required examination, but is still quite impaired in terms of overall ability to function in a social manner, including that required in an occupational setting" R. 5W-5X, 637). At the hearing, the ALJ presented Dr. Hinkeldey's explanation to the VE in the form of a hypothetical question, and the VE testified that she was not able to extrapolate Dr. Hinkeldey's clarification into vocational terms and that she could not provide a meaningful response R. 5BB, 697-99). In her determination, the ALJ discredited Hinkeldey's opinion as being unsupported by any psychological testing, based on only one visit and subjective reports, and as being internally inconsistent R. 5X-5Y).

Plaintiff underwent another mental examination on June 16, 2003, performed by Dr. David Fleischmann. R. 437-40). Dr. Fleischmann performed a mental status examination and administered an intellectual assessment and a personality assessment. On mental status examination, Plaintiff was found to be alert and oriented, and his speech was logical and coherent. Dr. Fleischmann found Plaintiff to have a full scale IQ of 70, placing him in the borderline of intellectual functioning. Dr. Fleischmann noted Plaintiff's past history of moderately heavy alcohol use and criminal charges including trespass, resisting arrest, and DUI (R. 437-38). Plaintiff indicated he was taking Vicodin or Vioxx (R. 438). Dr. Fleischmann indicated Plaintiff was "Opioid Dependent" and that medication side effects would significantly contribute to his current adjustment difficulties (R. 5T, 438, 440). Dr. Fleischmann opined that Plaintiff was suffering from Adjustment Disorder with Physical complaints and Depressed Mood, chronic (R. 440). In a supplemental questionnaire, Dr. Fleischmann indicated Plaintiff would not have significant work-related functional limitations (R. 441-42).

On November 3, 2003, Plaintiff presented to Lakeside Alternatives, a mental health clinic (R. 617-622). On December 24, 2003, he was evaluated by a registered nurse practitioner (R. 614). Plaintiff's mood was noted to be depressed, his affect blunted, his concentration and attention difficult, and his insight, judgment and impulse control limited (R. 615). He was fully oriented, and thought process was coherent, logical and organized. Memory was intact, and he denied any paranoia. *Id.* The nurse practitioner determined that Plaintiff was suffering from Major Depression, recurrent, moderate, and assessed a global assessment of functioning of 45. He was started on Lexapro for depression, Neurontin for anxiety, and Seroquel for sleep (R. 616). On return visit to the nurse, it was noted that the Seroquel had helped with the sleep, but the depression remained, so the dosage of Lexapro increased (R. 610). Upon return visit, it was reported that the increase of Lexapro helped

decrease depression (R. 608).  On return visit July 23, 2004, Plaintiff reported that he had been arrested for domestic violence, along with his brother "who was drunk and picking a fight." (R. 605).

On August 5, 2004, Plaintiff underwent yet another mental status examination performed by Dr. Michael Harrell. (R. 514-516).  As noted by the ALJ, Plaintiff was able to remember recent and remote events and presented with simple but logical thought processes (R. 5V; 514).  Concentration was adequate.  Dr. Harrell indicated that Plaintiff was suffering from Depressive Disorder, moderate, with anxious and dysthymic features. (R. 515).  Although no personality testing was performed, Dr. Harrell indicated that statements and presentation made during the evaluation suggest "a personality disorder with avoidant and schizotypal features and the possibility of borderline intellectual functioning." *Id.*  Dr. Harrell opined that Plaintiff's current GAF [3] was 60, with an estimated GAF of 60 for the previous year.  He indicated that Plaintiff "appears barely able to handle his own funds, and may require supervision because of his mental and intellectual status." (R. 516).

Plaintiff returned to Lakeside Alternatives and was seen by Dr. Aysha Meloukheia, M.D. on March 4, 2005 (R. 599).  At that time, Plaintiff reported that his medication was helping, but he continued to have paranoid thoughts.  He was assessed with a major depressive disorder and a GAF of 48.

In addition, the administrative record contains the opinions of five separate state agency psychologists (R. 222-25, 239-52, 346-59, 525-35, and 555-63).  On March 29, 2001, a state agency psychologist reviewed the available medical evidence at the initial determination level and concluded that Plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions, moderately limited in the ability to maintain attention and concentration for extended periods, but that Plaintiff was either not significantly limited or that there was no evidence of a

---

[3]Global Assessment of Functioning.

limitation in all other categories of work-related functioning (R. 222-25).  On October 7, 2001, another state agency psychologist reviewed the available medical evidence during the initial determination level and concluded that Plaintiff's mental impairment was not severe (noting only mild limitations)  (R. 239, 249, 251).

On March 29, 2002, during the reconsideration level of determination, the state agency psychologist reviewed the available record and concluded that Plaintiff's mental impairment would create mild limitations in activities of daily living, mild limitations in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, and pace (R. 356). The psychologist also opined that Plaintiff would have no episodes of decompensation.  The ALJ gave this opinion great weight because she determined that it was consistent with the medical evidence as a whole (R. 5X, 5Z).

A fourth state agency psychologist reviewed the medical evidence on August 17, 2004, and concluded that Plaintiff would exhibit mild restrictions of daily living, moderate limitations in the ability to maintain social functioning, and moderate difficulties in maintaining concentration, persistence or pace (R. 532).  A fifth state agency psychologist reviewed the evidence in December 2004, and also determined Plaintiff would have mild restrictions in activities of daily living; moderate restrictions in maintaining social functioning; moderate restrictions in maintaining concentration, persistence, and pace; and no episodes of decompensation (R. 560).

The ALJ found Plaintiff to have an affective disorder and a somatoform disorder and determined that Plaintiff would have moderate abilities to understand, remember, and carry out detailed instructions and maintain attention and concentration for extended periods, mild restrictions of daily living, mild difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence or pace (R. 5CC).  Plaintiff asserts that this finding is not supported by

substantial evidence in that the providers and consultative examiners found significant limitations, and the ALJ did not explicitly discuss all five state agency opinions.

The medical evidence regarding Plaintiff's mental health was mixed and does not cover the entirety of the time at issue. Plaintiff notes the low GAF scores during Plaintiff's treatment at Lakeside, but Plaintiff was treated at Lakeside for only a year and a half and these evaluations were mostly conducted by a nurse practitioner, who is not an "acceptable medical source" entitled to deference under the Commissioner's regulations. *See generally* 20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1) *et seq.*[4] The lone treatment note from a psychiatrist at Lakeside does show a GAF of 48, but that same treatment note (as well as others) also reflects that the medication was helping. Moreover, seven months later, Dr. Harrell assessed Plaintiff with a GAF of 60, and noted that the assessment also related to the previous year. Dr. Fleischmann indicated Plaintiff would not have significant work-related functional limitations, and it is undisputed that Plaintiff did not have any hospitalizations or emergency room admissions relating to psychiatric difficulties, and was consistently described as cooperative and fully oriented.

Plaintiff asserts that the ALJ erred in not explicitly discussing all of the state agency opinions, citing *Sharfarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir.1987) (noting that the ALJ must state with particularity the weight she gives to medical opinions and the reasons why). It is true that the ALJ did not discuss each of the five opinions explicitly. However, as the Eleventh Circuit has noted, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision. . . ." *See Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005), and considering the extent of this record, such would be exceptionally difficult. The ALJ noted that she had "review[ed] all the

---

[4] But note that a nurse practitioner is considered an "other source" under the Commissioner's regulations. *See* 20 C.F.R. § 404.1513(d)(1).

evidence of record" (R. 5N) and explicitly credited one of the state agency opinions. There is no basis to conclude that the ALJ did not consider the other opinions in choosing to place particular reliance on this one. Importantly, *none* of the state agency psychologists found Plaintiff to be disabled.

It is not for this Court to re-weigh the evidence or to choose between competing opinions. Rather, this Court must look to the totality of the evidence and if there is substantial evidence – that is, more than a scintilla – to support the ALJ's decision, it must be affirmed. *See Dyer,* 395 F.3d at 1210 (if the decision is supported by substantial evidence, the Court must affirm even if proof preponderates against it). The ALJ discussed the evidence from the examining and treating sources and concluded that, while Plaintiff had a severe impairment, it did not meet or equal the listings and was not so severe as to be disabling. As there is substantial (though by no means uniform) evidence to support this conclusion, it must be affirmed.

*Credibility*

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*,

957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, Plaintiff asserts that the ALJ erred in finding him "not totally credible" when the record shows that Plaintiff suffered from documented impairments causing significant limitations. Specifically, Plaintiff contends that he suffered "chronic, debilitating problems associated with his depression" and asserts that the ALJ did not assess his credibility in regards to his mental condition (Doc. No. 13 at 15). The Court disagrees.

The ALJ made a specific credibility finding, noting Plaintiff's mental health:

> While it is reasonable to conclude that the claimant should have some pain and/or limitations as a result of his physical *and mental impairments,* the evidence as a whole does not substantiate such severe functional limitations that would preclude him from all work-related activity as is required under Social Security rules and regulations.

(R. 5Y - emphasis added).

The ALJ supported this conclusion and specifically discussed Plaintiff's depression throughout the decision, noting that Plaintiff has had no episodes of decompensation (R. 5X), "on mental status examination, the claimant appeared well socialized and cooperative" (R. 5Z), and one of the

examiners found that while Plaintiff was depressed, "he had no restrictions." (5Y). Moreover, the ALJ observed that Plaintiff had never been hospitalized for mental issues, and that Plaintiff reported that the medications helped his depression (R. 5P). As the ALJ did, in fact, make a specific credibility finding with respect to Plaintiff's mental health limitations and as this finding was supported by substantial evidence, there is no error and it is affirmed.[5]

## CONCLUSION

To be sure, the Court does not doubt that Plaintiff has documented difficulties which cause him significant distress. The issue before the Court, however, is not whether this Court would make the same decision or whether another decision could be warranted from the record, but only whether the decision made by the ALJ was in accordance with proper legal standards and supported by substantial (not necessarily uniform or overwhelming) evidence. The Court finds, under this deferential standard, that the administrative decision presently before the Court is, in fact, supported by substantial evidence and was made in accordance with the proper legal standards. As such, it is **affirmed.** The Clerk is directed to enter judgment accordingly and to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 21, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[5] Plaintiff does not appear to contest the findings with respect to his physical condition, so the Court does not address same, except to note that the record contains substantial evidence to support the ALJ's conclusion.